725 A.2d 154

**COMMONWEALTH of Pennsylvania, Appellee**

v.

**James Henry CARPENTER, Appellant.**

Supreme Court of Pennsylvania.

Submitted May 19, 1998.

Decided Jan. 26, 1999.

Reargument Denied May 7, 1999.

438

Robert Brett Dunham, Philadelphia, for J. Carpenter.

Thomas H. Kelley, York, for the Com. Robert A. Graci, Harrisburg, for Office of Atty. Gen.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

*OPINION*

NEWMAN, Justice.

James Henry Carpenter (Appellant) appeals from the orders of the Court of Common Pleas of York County (PCRA court) that denied his petition for relief under the Post Conviction Relief Act.

## I. *FACTUAL AND PROCEDURAL HISTORY*

Evidence adduced at Appellant's trial revealed that on September 30, 1983, Jimmie Lee Taylor (victim) was stabbed in the heart on South Penn Street in the City of York. He was pronounced dead at York Hospital at 10:58 p.m. that evening. The victim was found to have had a blood alcohol content of .356 percent.

The Commonwealth's principal witness at trial was Appellant's girlfriend, Ruth Helen Emmil (Ms. Emmil). Appellant knew the victim, who had harassed and threatened Ms. Emmil on several occasions, and he had spoken with the victim in an unsuccessful attempt to get him to stop harassing Ms. Emmil. In May of 1983, the victim, without apparent provocation, hit Appellant in the face with a hatchet, knocking him unconscious and fracturing his jaw.

Ms. Emmil testified that on the night of September 30, 1983, she and Appellant were drinking together in a bar. They left for another bar, and were walking on South Penn Street at about 9:30 p.m. when the victim crossed the street carrying a six-pack of beer and asked Appellant, Ms. Emmil, and another couple if anyone wanted some beer.

At this time the victim approached the group and Ms. Emmil stated that, "I hope there don't be no shit," when the other couple, fearing an altercation, went on ahead to the second bar. It was then, according to Ms. Emmil, that Appellant took a knife from his pocket and, without provocation, stabbed the victim in the chest. The four-inch blade of the knife pierced through the victim's sternum, severed the top of his heart and killed him.

Appellant wiped the blood from the knife with a handkerchief, closed the knife, and tossed it and the handkerchief over a fence and into the back yard of a nearby house. (The owner of the house, the attorney for the City of York, found the knife and handkerchief in his tomato garden the following morning.) Appellant and Ms. Emmil then met the other couple at the bar, as planned, and had some drinks.

When first questioned, Ms. Emmil did not tell the police what she knew about the stabbing, but eventually she did tell them that Appellant had stabbed the victim. Ms. Emmil testified at trial that, after the stabbing, Appellant threatened to kill her if she told anyone what had happened. To add credibility to his threats, Appellant told her that he had killed his ex-girlfriend. Another Commonwealth witness testified at trial that, in July of 1983, that Appellant had offered him $500.00 to kill the victim.

According to Appellant's testimony, it was Ms. Emmil who had stabbed the victim without provocation and then wiped the knife with a handkerchief and threw the objects over the fence. Appellant said that he did not go to the police because he wanted to protect his girlfriend. He further stated that, after the stabbing, he asked a friend to purchase a knife similar to the one used by Ms. Emmil to confuse the police who, he was sure, would suspect him of the stabbing because of his known animosity toward the victim.

The jury believed Ms. Emmil's version of the stabbing, and returned a verdict of guilty of murder of the first degree on January 20, 1984. Pursuant to the Sentencing Code, a sentencing hearing was immediately conducted before the same jury.[1] The jury found one aggravating circumstance, that Appellant had "a significant history of felony convictions involving the use or threat of violence to the person,"[2] (42 Pa.C.S. § 9711(d)(9)), and that the aggravating circumstance

1. 42 Pa.C.S. § 9711(a).

2. Appellant's criminal history included a conviction for murder of the third degree of a prior girlfriend and another felony conviction for assault by a prisoner.

outweighed any mitigating circumstance. The jury, therefore, sentenced Appellant to death. 42 Pa.C.S. § 9711(c)(1)(iv).

Appellant filed post-trial motions, which the Court of Common Pleas of York County denied, and he was formally sentenced on June 25, 1984. This Court affirmed his conviction and judgment of sentence of death on September 25, 1986, *Commonwealth v. Carpenter*, 511 Pa. 429, 515 A.2d 531 (1986), and we remanded the matter back to the Court of Common Pleas of York County for appointment of new counsel to represent Appellant in post-conviction proceedings.

New counsel was appointed and the PCRA court held a hearing on thirteen allegations of trial counsel's ineffectiveness. The court found that all of these allegations had no foundation and denied Appellant relief. On appeal to this Court, Appellant renewed twelve of the allegations of trial counsel's ineffectiveness. We also found these claims to be without merit and, on November 19, 1992, affirmed the order denying Appellant PCRA relief. *Commonwealth v. Carpenter*, 533 Pa. 40, 617 A.2d 1263 (1992).

On July 23, 1991, while his first PCRA appeal was still pending in this Court, Appellant filed a petition for a writ of habeas corpus in the United States District Court for the Middle District of Pennsylvania. The District Court stayed the habeas corpus action pending disposition of the PCRA appeal. When this Court issued a decision on November 19, 1992, denying Appellant's appeal, the District Court lifted the stay and permitted Appellant's counsel to withdraw. New counsel was appointed who filed an amended petition for habeas corpus and was granted leave to conduct discovery. The District Court issued an opinion regarding Appellant's habeas petition on November 28, 1994. *Carpenter v. Vaughn*, 888 F.Supp. 635 (M.D.Pa.1994). In the opinion, the Court reviewed the twenty-four issues presented (twenty-three of which argued trial counsel's ineffectiveness) and dismissed twenty-two claims for not having merit. The Court ordered further briefing on the two remaining issues. Later, on February 8, 1995, the Court directed briefing on one additional issue.

The District Court issued its decision on Appellant's three remaining claims on May 30, 1995, and denied his petition for a writ of habeas corpus. *Carpenter v. Vaughn,* 888 F.Supp. 658 (M.D.Pa.1995). Appellant appealed to the Third Circuit Court of Appeals, which Court ordered to hold federal proceedings in abeyance pending the disposition of a second PCRA petition filed in the Court of Common Pleas of York County on January 11, 1996 (the appeal of which is before this Court today).

As stated above, Appellant filed his second Post Conviction Relief Act petition on January 11, 1996, in which he raised seventeen issues. On January 10, 1997, the PCRA court dismissed, without a hearing, sixteen of the claims raised in the petition. (The PCRA court also entered a forty-eight-page opinion explaining its decision to dismiss the claims.) The PCRA court directed that a hearing be held on the remaining claim, the allegation that the Commonwealth knowingly withheld exculpatory evidence and knowingly presented false testimony.

A hearing was held on this claim on March 18, 1997. At the hearing's conclusion the PCRA court found that the Commonwealth had not knowingly withheld exculpatory evidence and had not knowingly presented false testimony through its handling of the primary Commonwealth witness, Ms. Emmil. Appellant has now appealed that ruling, and the dismissal of his other sixteen claims, to this Court.

## II. *ISSUES*

1. Is the Appellant entitled to relief from his first degree murder conviction and death sentence because they were based on the testimony of a witness, Ms. Emmil, whom the court below found unreliable; because trial counsel provided ineffective assistance with respect to this witness; and because of misconduct by the Commonwealth regarding this witness?

2. Was trial counsel ineffective for failing to investigate, develop and present mitigating evidence of Appellant's de-

prived and neglected childhood, mental illness, cognitive defects and positive work history and social relationships?

3. Was trial counsel ineffective in his closing argument during the penalty phase?

4. Does after-discovered evidence entitle Appellant to relief from his conviction and sentence, and was trial counsel ineffective for failing to call the witness who would have provided this exculpatory evidence?

5. Did the trial court incorrectly charge the jury on "duress" and fail to explain the concept of "substantial domination," and was trial counsel ineffective for failing to object to these errors?

6. Did the Commonwealth improperly rely on Appellant's conviction for assault by prisoner as an aggravating circumstance when that conviction was unconstitutionally obtained, and were prior counsel ineffective for failing to litigate this claim?

7. Was trial counsel ineffective for failing to object to the testimony of Parole Officer Jefferies when he said that he "thought" that Appellant might seek revenge against Mr. Taylor?

8. Were the statements of Ms. Emmil introduced at trial in violation of state law prohibiting the use of hearsay and in violation of Appellant's right to confront the witnesses against him?

9. Did the trial court err when it failed to instruct the jury that life imprisonment means life without possibility of parole, after Appellant's future dangerousness was put at issue?

10. Is Appellant entitled to relief from his sentence of death because the jury instructions and sentencing phase verdict sheet improperly required the jury to be unanimous before it could give effect to mitigating evidence?

11. Was trial counsel ineffective for failing to object to each of the above-cited errors?

12. Was Appellant's direct appeal attorney ineffective for failing to raise the claims contained herein, and is Appellant

entitled to restoration of his appellate rights in that the York County District Attorney simultaneously employed appellate counsel?

13. Did the trial court give the jury inaccurate sentencing information?

14. Did the ex parte communication of the trial court with the Commonwealth violate Appellant's right to due process of law and deprive him of adequate appellate review of his conviction and sentence?

15. Should Appellant's death sentence be vacated because it was based on an aggravating circumstance that is unconstitutionally vague?

16. Were the notes of testimony from Appellant's trial and capital sentencing not full and accurate, depriving him of meaningful appellate review?

17. Is Appellant entitled to relief from his conviction and sentence because of the cumulative errors described herein?

18. Was Appellant entitled to an evidentiary hearing?

## III. DISCUSSION

### A. BACKGROUND

 This Court's standard of review of an order denying post-conviction relief is limited to examining whether the evidence of record supports the determination of the PCRA court and whether the ruling is free from legal error. *Commonwealth v. Morales*, 549 Pa. 400, 701 A.2d 516, 520 (1997).

 To be eligible for PCRA relief a petitioner must establish that his conviction or sentence resulted from one or more of the enumerated errors or defects listed in 42 Pa.C.S. § 9543(a)(2) [3] and that the issues that he raises have not been

---

**3.** 42 Pa.C.S. § 9543(a)(2), in effect at the time Appellant filed his PCRA Petition, provided:

That the conviction or sentence resulted from on of the following:
(i) A violation of the Constitution of Pennsylvania or laws of this Commonwealth or the Constitution of the United States which, in the circumstances of the particular case, so undermined the truth-deter-

previously litigated. *Commonwealth v. Crawley*, 541 Pa. 408, 413, 663 A.2d 676, 678 (1995). An issue has been previously litigated if the highest appellate court in which the petitioner could have had review has ruled on the merits of the issue or the issue has been raised and decided in a proceeding collaterally attacking the conviction or sentence. *Id.*, 42 Pa.C.S. § 9544(a)(2),(3). If an issue has not been previously litigated, the petitioner must then prove that the issue has not been waived, or that, if waived, the conditions pursuant to 42 Pa.C.S. § 9543(a)(3)(ii) or (iii) have been met.[4,5]

mining process that no reliable adjudication of guilt or innocence could have taken place.

(ii) Ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

(iii) A plea of guilty unlawfully induced where the circumstances make it likely that the inducement caused an individual to plead guilty.

(iv) The improper obstruction by Commonwealth officials of the petitioner's right of appeal where a meritorious appealable issue existed and was properly preserved in the trial court.

(v) A violation of the provisions of the Constitution, law or treaties of the United States which would require the granting of Federal habeas corpus relief to a State prisoner.

(vi) The unavailability at the time of trial of exculpatory evidence that has subsequently become available and that would have affected the outcome of the trial if it had been introduced.

(vii) The imposition of a sentence greater than the lawful maximum.

(viii) A proceeding in a tribunal without jurisdiction.

4. Section 9543(a)(3), in effect at the time Appellant filed his petition, provided:

That the allegation of error has not been previously litigated and one of the following applies:

(i) The allegation of error has not been waived.

(ii) If the allegation of error has been waived, the alleged error has resulted in the conviction or affirmance of sentence of an innocent individual.

(iii) If the allegation of error has been waived, the waiver of the allegation or error during pretrial, post-trial or direct appeal proceedings does not constitute a State procedural default barring Federal habeas corpus relief.

5. This Court recently held that we would no longer apply the "relaxed waiver" rule in appeals from post-conviction proceedings in capital cases. *See Commonwealth v. Albrecht*, 554 Pa. 31, 720 A.2d 693 (1998). Instead, we will review "waived" issues only where an appellant shows that the statutory exceptions contained in the pre–1995 version of the

 Additionally, we note that this is Appellant's second post-conviction request for relief. Accordingly, his request for relief "will not be entertained unless a strong prima facie showing is offered to demonstrate that a miscarriage of justice may have occurred." *Commonwealth v. Lawson*, 519 Pa. 504, 513, 549 A.2d 107, 112 (1988). A petitioner makes a prima facie showing if he "demonstrates that either the proceedings which resulted in his conviction were so unfair that a miscarriage of justice occurred which no civilized society could tolerate, or that he was innocent of the crimes for which he was charged." *Commonwealth v. Morales*, 549 Pa. at 409–10, 701 A.2d at 520–21,

It is with these stringent standards in mind that we turn to Appellant's PCRA allegations. We begin with a discussion of those issues that include a claim that prior counsel's representation was ineffective.

## B. *CLAIMS OF INEFFECTIVENESS OF COUNSEL*

### I. *Unreliable Witness/Prosecutorial Misconduct*

Appellant's first claim is multifaceted. He claims entitlement to relief because his conviction was based on the testimony of an unreliable witness, that trial counsel was ineffective with respect to this witness, and that the Commonwealth committed misconduct with respect to this witness.

The witness at issue is Ms. Emmil, Appellant's girlfriend, who testified at trial that she saw him stab James Taylor. Appellant claims that Ms. Emmil told investigators at the time of the original investigation that there was an altercation between Appellant and James Taylor, supporting a claim for self-defense. He also claims that the Commonwealth committed misconduct with respect to Ms. Emmil's testimony because it knew of her allegation of self-defense and permitted her to testify that the offense was premeditated. He further claims

PCRA apply (and the petition is governed by the pre–1995 version of the PCRA), or when the appellant properly raises claims of counsel's ineffectiveness.

that counsel provided ineffective assistance with respect to this witness.

The PCRA court held a hearing on the claim that the Commonwealth knowingly withheld exculpatory evidence and knowingly presented false testimony on March 18, 1997. Ms. Emmil testified, as did Dennis Williams and William Smallwood, two present or former York County detectives who had investigated the Taylor murder and prepared the affidavit of probable cause to arrest the Appellant. After hearing all of the witnesses, the Court made the following decision:

> In reference to our factual findings in reference to the hearing that we just had, we heard testimony from Appellant Helen Emel [sic], and from her testimony it was obvious to the Court that in reference to her credibility she essentially was unable to answer any question that was not a leading question, just responding essentially to the facts that defense counsel would put into his questions to her.
>
> When she was asked directly, what did you tell the police, her response was, I don't remember. We did permit her to have her recollection refreshed from her affidavit, but we would note that the affidavit by her testimony was not written by her but was written essentially by the defense investigator, and the language used in the affidavit is totally inconsistent with any speech patterns by Mrs. Emel [sic].
>
> We make a finding of fact that essentially Mrs. Emel [sic] was an easily led witness on the stand, and we did not find any persuasive testimony from her to indicate that the Commonwealth knowingly withheld exculpatory evidence or the Commonwealth knowingly presented false testimony through the handling of her.
>
> We also heard from Detective Williams and Detective Smallwood, both who essentially indicated that Miss Emel [sic] never informed them that this was a situation of self-defense, and, accordingly, we find as a matter of fact the Commonwealth did not knowingly withhold exculpatory evidence and did not knowingly present false testimony

through its handling of the primary Commonwealth witness Miss Emel [sic].

N.T. 3/18/97, pp. 54–55.

Appellant has presented us with absolutely no basis upon which to disagree with any of the factual findings of the PCRA court, and we decline to do so.

An additional problem with Appellant's arguments regarding these claims is the fact that his defense at trial was *not* self-defense, but instead the claim that it was Ms. Emmil who had stabbed James Taylor without provocation. Appellant took the stand, denied that he had stabbed the victim, and placed the knife and the crime solely in Ms. Emmil's hands.

 To obtain relief on his claim of ineffective assistance of counsel, Appellant is required to establish (1) that there is merit to the underlying claim, (2) that counsel had no reasonable basis for his or her course of conduct, and (3) that there is a reasonable probability that, but for the act or omission challenged, the outcome of the proceeding would have been different. *Commonwealth v. Jones,* 546 Pa. 161, 175, 683 A.2d 1181, 1188 (1996). Counsel is presumed effective and the Appellant has the burden of proving otherwise. *Commonwealth v. Marshall,* 534 Pa. 488, 633 A.2d 1100 (1993). Additionally, counsel cannot be considered ineffective for failing to raise a claim that is without merit. *Commonwealth v. Peterkin,* 538 Pa. 455, 649 A.2d 121 (1994), *cert. denied,* 515 U.S. 1137, 115 S.Ct. 2569, 132 L.Ed.2d 821 (1995). Pursuant to the PCRA, an ineffectiveness claim provides relief only when it "so undermined the truth determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(ii).

 The claim that trial counsel was ineffective with regard to his questioning of Ms. Emmil does not meet the first prong (that there is merit to the underlying claim) or the second prong of the three-part ineffectiveness test, because counsel clearly had a reasonable basis for his course of conduct (the Appellant's defense of total non-involvement). Accordingly, he is not entitled to relief on this claim.

### 2. *Mitigating Evidence*

Next, Appellant claims that trial counsel was ineffective for failing to investigate, develop, and present mitigating evidence of his traumatic childhood, mental illness, cognitive deficits and positive work history and social relationships. Appellant claims that, had trial counsel adequately prepared for the capital sentencing hearing, he could have presented powerful mitigating evidence in these categories.

We first note that counsel's failure to present mitigation evidence, without more, is not per se ineffective assistance of counsel. *Commonwealth v. Beasley,* 544 Pa. 554, 566, 678 A.2d 773, 778 (1996). Additionally, to be eligible for relief under the PCRA the petitioner must establish that the issue has not been previously litigated. *Commonwealth v. Crawley, supra.* In the instant matter, Appellant has already had review of his claim that trial counsel failed to present mitigating evidence. *See Commonwealth v. Carpenter,* 533 Pa. 40, 617 A.2d 1263 (1992), in which this Court, in affirming the denial of his first PCRA petition, reviewed and found without merit twelve allegations of trial counsel's ineffectiveness, including a claim that counsel was ineffective for failing to argue mitigating circumstances to the jury. *Id.* at 52, 617 A.2d at 1269. Finally, caselaw provides that a petitioner "cannot obtain post-conviction review of claims previously litigated on appeal by alleging ineffective assistance of prior counsel and presenting new theories of relief to support previously litigated claims." *Commonwealth v. Beasley,* 544 Pa. at 565, 678 A.2d at 778.

Since the claim that trial counsel was ineffective for failing to present mitigation evidence has already been litigated, Appellant is not entitled to PCRA relief on this claim.

### 3. *Trial Counsel's Penalty Phase Closing Argument*

Appellant next argues that trial counsel presented a weak, sparse closing argument that harmed him in several ways including racially disparaging him. The complained of portion of counsel's closing argument reads as follows:

I think you should find he lived in a different kind of community than we do. I don't think he should be penalized because what he does for entertainment is go out on Friday night and drink a little and have a little marijuana. I think you will find eighty percent of his community does that.

N.T. 1/20/84 at 29. Appellant, who is African–American, argues that counsel converted his substance abuse, which should have been seen as one of the diverse frailties of humankind that mitigates against a sentence of death, into a racially stereotyped attribute of his community. This claim is without merit.

The PCRA court denied a hearing on this claim. The PCRA court examined the exact language of the closing argument and concluded that the "community" to which counsel referred was one of a social class and life style, not specifically African–American, but instead comprising a racial cross-section. It found this diversity apparent in Appellant's close relationship with Ms. Emmil and others. We do not disagree with the determination of the trial court. Additionally, this issue is presented as a claim of ineffectiveness; accordingly, to obtain relief, Appellant must meet certain threshold standards previously outlined. He has not proved that there is merit to the claim, that counsel had no reasonable basis for his conduct, or that there is a reasonable probability that, but for the act, the outcome of his trial would have been different, *Commonwealth v. Jones, supra.* Therefore, Appellant is entitled to no further review. *See also Commonwealth v. Dennis,* 552 Pa. 331, 715 A.2d 404 (1998) (trial counsel not ineffective for making comments that appellant claimed disparaged his own skills and bolstered the credibility of the prosecutor—no demonstration that strategy was unreasonable or appellant prejudiced.)

### 4. *After–Discovered Evidence*

Appellant next claims that after-discovered evidence shows that he is innocent of the murder of James Taylor and

that his trial counsel was ineffective for failing to call the witness who would have provided this exculpatory evidence.

The witness at issue is one Frankie Stewart. Attached to Appellant's PCRA petition was a handwritten, *undated,* affidavit of Ms. Stewart that read as follows:

I, Frankie Stewart do hereby declare and verify as follows:

1. My name is Frankie Stewart and I live in York, Pennsylvania. I knew Jimmy Zee Taylor and James Carpenter.

2. I was at my mom's house and I had been drinking a lot I was just starting to leave my mom's house and I saw Jimmy Zee fall. James Carpenter was not in the immediate area when Jimmy Zee was stabbed.

3. I hereby certify that the facts set forth herein are true and correct to the best of my personal knowledge, information and belief and that I makes [sic] the statements above subject to 18 Pa.C.S. subsection 4904.

Although captioned as an "after-discovered evidence" claim, what Appellant actually argues is ineffectiveness of his trial counsel. He claims that trial counsel was ineffective for failing to investigate and use this exculpatory witness at trial because the evidence that he was not in the immediate area when the stabbing occurred is consistent with his defense at trial and differs from Ms. Emmil's trial testimony. This is incorrect.

At trial, Ms. Emmil testified that she was with Appellant when he stabbed James Taylor. Appellant's defense was that it was Ms. Emmil who stabbed the victim. In fact, he took the stand and so testified. Throughout this matter, he has claimed that he was present when Mr. Taylor was stabbed, but it was Ms. Emmil who stabbed him. To show ineffectiveness, Appellant must establish that counsel could have no reasonable basis for his act or omission. A reasonable basis for not introducing the testimony of Frankie Stewart is glaringly apparent; her testimony would have contradicted Appellant's defense. Accordingly, counsel will not be found ineffective for failing to present this witness. *See Commonwealth v.*

*Hardcastle,* 549 Pa. 450, 701 A.2d 541 (1997) (counsel not ineffective for failing to call as alibi witness a witness who would have contradicted defense strategy.)

### 5. *Trial Court's "Duress" Charge and Failure to Explain the Concept of "Substantial Domination"*

In his next claim, Appellant argues that counsel was ineffective for failing to object to the incorrect duress charge of the trial court during the penalty phase of his trial. He argues that the court, in defining "duress" for the jury, used the Crime Code's definition of duress for the guilt-innocence phase of the trial. He further claims that the court's error prevented the jury from giving mitigating effect to nonexculpatory duress and prevented the jury from giving mitigating effect to the possibility that Appellant acted under the influence or domination of Ms. Emmil. However, this claim has already been litigated and was found to have no merit. Specifically, in his first PCRA petition, Appellant claimed error in the "duress" instruction of the trial court. We reviewed and denied Appellant relief on this claim in our opinion of November 19, 1992. *Commonwealth v. Carpenter,* 533 Pa. at 51–52, 617 A.2d at 1268. Thus, we also deny this claim today.

### 6. *Appellant's Conviction for "Assault by Prisoner" as Aggravating Factor*

The aggravating factor found by the jury to support Appellant's death sentence was that he had a significant history of felony convictions involving the use or threat of violence. 42 Pa.C.S. § 9711(d)(9). Appellant had previously been convicted of third degree murder [6] and felony assault by prisoner.[7] He now claims that his guilty plea to the charge of assault by prisoner, entered in the Montgomery County Court of Common Pleas on January 16, 1976, was not knowingly and voluntarily entered. Specifically, he claims that he was not advised of certain rights (including the right to call witnesses

6. 18 Pa.C.S. § 2502(c).

7. 18 Pa.C.S. § 2703.

on his behalf) and that trial counsel was ineffective for failing to litigate the validity of this conviction.

The PCRA court denied Appellant relief on this claim, concluding that trial counsel was not ineffective for failing to place a final, prior conviction at issue before the sentencing jury. The PCRA court also noted that whether the guilty plea, entered in a different county, was knowing and voluntary was not properly before it. We agree. We also note that Appellant has apparently never attempted to challenge the voluntariness of the plea in the court in which it was entered. Further, it is well established that a "showing of prejudice on the order of manifest injustice is required before withdrawal [of a guilty plea after sentencing] is properly justified." *Commonwealth v. Shaffer*, 498 Pa. 342, 346, 446 A.2d 591, 593 (1982) (emphasis and citations omitted). Finally, although Appellant claims that he was not advised of certain rights during the guilty plea colloquy, he does *not* claim that his colloquy did not contain the six inquiries mandated by this Court in *Commonwealth v. Dilbeck*, 466 Pa. 543, 353 A.2d 824 (1976), (which case was filed two months after the guilty plea Appellant now challenges). Considering the circumstances presented, we do not find that trial counsel was ineffective in failing to challenge a guilty plea that the Appellant himself has never formally challenged as involuntary.

### 7. *Testimony of Parole Officer Jefferies*

Next, Appellant claims that trial counsel was ineffective for failing to object to the testimony of Parole Officer Jefferies who testified that, when he met with Appellant shortly after the victim had broken Appellant's jaw, he "thought" that Appellant might seek revenge against James Taylor. The testimony unfolded as follows:

Q. Did you talk to him about who had done this to him?

A. Yes, sir, I did.

Q. What was the conversation?

A. I asked him if he—I asked him what happened. He said he was hit with the rear side of an axe handle.

Q. An axe handle?

A. In an alley around Penn Street. I said, "Who did it?" He said he didn't know who did it. And I said, "James, why don't you just tell me who did it and we will go to the police and take care of the situation the way it is supposed to be taken care of. We'll file charges against the person, and we'll do it the right way."

Because I was afraid of what I thought he would do. I said, "Because I was afraid," and I told him, "I was afraid that you'll go out and take care of him" I said, "If you do, you may kill him."

Q. And what did he tell you?

A. He said he didn't know who hit him with the axe handle.

N.T. 1/18/84 p. 48. Defense counsel objected at this point, as to what Officer Jefferies said he thought Appellant would do. The trial court struck that from the record and instructed the jury to disregard it. Testimony continued:

Q. And he said he didn't know who did it?

A. Yes, sir.

Q. Did you try and persuade him to go to the police on the matter?

A. I discussed it with him I think about 40 minutes that day. I was concerned that he had his jaw broken, and I was fearful that something would happen in retaliation. And I did try to say something to him.

Q. Would he go to the police?

A. No, sir.

N.T. 1/18/84 p. 49. On redirect examination, Mr. Jefferies testified:

Q. Did you express a warning to him that he shouldn't take this on himself?

A. Yes, I did. At least on two occasions I remember making a statement. I can't remember the exact words. I said something like you can't do it by yourself, this is what

we have police for. This is what my job is, to help you out with the situation.

N.T. 1/18/98 p. 50.

Appellant argues that trial counsel was ineffective for failing to object to the second and third instances of Mr. Jefferies' testimony that he (Mr. Jefferies) was concerned that Appellant would retaliate against Mr. Taylor. Appellant claims that the opinion evidence was highly prejudicial and irrelevant. We note, however, that what he does not do is cite any support for this argument, nor does he attempt to establish that trial counsel's failure to object was unreasonable. See *Commonwealth v. McIntyre*, 492 Pa. 306, 424 A.2d 874 (1981) (ineffectiveness claim fails when defendant makes no attempt to show that counsel's actions unreasonable or that the remarks so prejudicial to compel objection.) Further, Appellant does not even try to address the stringent PCRA standard, that an ineffectiveness claim provides relief only when it "so undermined the truth determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(ii). Accordingly, this claim affords him no relief.

### 8. *Hearsay Violation*

Appellant next argues that a hearsay and Confrontation Clause violation occurred when witness Lavilla Enriquez testified regarding statements made by Ms. Emmil on the night of the stabbing. Ms. Enriquez had been with Appellant and Ms. Emmil drinking in bars on the night James Taylor was killed. In response to a question from the prosecutor about what Ms. Emmil had said to her the evening of the stabbing, Ms. Enriquez responded: "She said she seen Jim go in his pocket and do something with the knife and clean it off and throw it over the fence." N.T. 1/18/84 p. 74. Defense counsel did not object. Later, in response to a question by the court, the witness testified that Ms. Emmil "said that she seen James go in his pocket and pull out the knife and stab him. And then clean the knife and throw it over the fence." N.T. 1/18/84 p. 98.

Appellant claims that these statements were hearsay, which met neither the "excited utterance" nor the "prior consistent statement" exception to the hearsay rule, and that his trial counsel was ineffective for failing to object to their admission.

 The classic definition of hearsay is an out-of-court utterance offered to prove the truth of the matter asserted. *Commonwealth v. Coleman,* 458 Pa. 112, 326 A.2d 387 (1974). While the parties agree that the testimony was hearsay, they disagree about whether it was nonetheless admissible. Although hearsay is generally inadmissible, this rule is subject to several exceptions. One such exception is the "excited utterance" exception. To qualify as an excited utterance a statement must be

a spontaneous declaration by a person whose mind has been suddenly made subject to an overpowering emotion caused by some unexpected and shocking occurrence, which that person had just participated in or closely witnessed, and made in reference to some phase of that occurrence which he perceived, and this declaration must be made so near the occurrence both in time and place as to exclude the likelihood of its having emanated in whole or in part from his reflective faculties...

*Commonwealth v. Washington,* 547 Pa. 550, 559, 692 A.2d 1018, 1022 (1997), quoting *Commonwealth v. Stokes,* 532 Pa. 242, 258, 615 A.2d 704, 712 (1992). Appellant argues that the statements were made later in the evening of the victim's death, at a bar removed from the scene of the stabbing and that no testimony was offered at trial that the statements were so close in time and place of the incident so as to exclude the likelihood that they emanated from Ms. Emmil's reflective faculties. Thus, he claims, the statements were inadmissible. The PCRA court disagreed. In its opinion dismissing the majority of Appellant's PCRA allegations, the court addressed the proper application of the excited utterance exception and determined that, while it was not clear concerning the amount of time that elapsed between the stabbing and the statements made by Ms. Emmil to Ms. Enriquez, the fact that the statements were not made immediately after the stabbing was

not dispositive of their admissibility, and the statements could have been admissible. We agree. In *Commonwealth v. Hess*, 270 Pa.Super. 501, 411 A.2d 830 (1979), the Superior Court affirmed the defendant's judgment of sentence after reviewing, and dismissing, his claim that the trial court committed error by admitting certain statements pursuant to the excited utterance exception to the hearsay rule. The statements were made approximately one-half hour after the "unexpected and shocking occurrence." The Court determined that, although the statements were not made immediately after the incident, that did not necessarily require their exclusion, reiterating that "[o]n numerous occasions, this court had previously approved the admission into evidence of such declarations notwithstanding interim periods comparable to or even greater than that involved in the present case." *Id.* at 507, 411 A.2d at 834. Later, in *Commonwealth v. Penn*, 497 Pa. 232, 439 A.2d 1154 (1982), we held that testimony by a minister as to a statement made by the child of a murder victim within approximately thirty minutes of his mother's attack was admissible, stating that, "[t]he fact that the boy's statement was not made immediately after the stabbing does not preclude its spontaneity." *Id.* at 242, 439 A.2d at 1159. This reasoning is equally applicable in the instant case where the complained of statements were made shortly after the stabbing of Jimmie Lee Taylor and could have been admissible as an exception to the hearsay rule.

Because Appellant has not established that his underlying claim of ineffectiveness is of arguable merit, this eighth claim must therefore fail.[8]

### 9. *"Life means Life" Instruction*

■■■ In his next claim, Appellant argues that he is entitled to have his death sentence vacated because the trial court failed to instruct the jury that "life means life" and that prior counsel were ineffective for failing to raise this issue. In

---

8. Appellant's claim that the admission of the statements constituted a separate Confrontation Clause violation is simply incorrect because Ms. Emmil was present at Appellant's trial, testified, and was cross-examined by Appellant's counsel.

support of this claim he cites to the United States Supreme Court's decision in *Simmons v. South Carolina*, 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994), which held that when a defendant's future dangerousness is at issue, he or she has the right to have the jury informed of his or her parole ineligibility.

Appellant was sentenced in 1984. *Simmons* was decided in 1994. In *Commonwealth v. Christy*, 540 Pa. 192, 217, 656 A.2d 877, 889 (1995), this Court held that, because *Simmons* announced a new rule of law in Pennsylvania, it was not to be applied retroactively to the collateral attack of sentences. Further, we went on to state that, "counsel is not ineffective for failing to predict a change in the law." *Id.* We find, therefore, that Appellant is not entitled to relief on this claim.

### 10. *Jury Instructions and Verdict Slip*

Next, Appellant claims that the trial court, in its charge to the jury, did not sufficiently advise the jury that any juror who individually found a mitigating circumstance could weigh that circumstance against the aggravating circumstances unanimously found, even if there was not unanimity as to the existence of that mitigating circumstance, and that prior counsel rendered ineffective assistance by failing to litigate this claim.

This Court has previously reviewed, in our opinions on Appellant's direct appeal and on denial of his first PCRA petition, the trial court's instructions to the jury and found the instructions to be without error. Appellant now presents a new theory of relief regarding jury instructions; however, as stated previously, to be eligible for relief under the PCRA, a petitioner must establish that the issue raised has not been previously litigated. *Commonwealth v. Crawley, supra.* A petitioner cannot obtain relief under the PCRA by advancing variations of claims previously litigated and then alleging ineffective assistance of prior counsel for not presenting these theories. *See Commonwealth v. Beasley, supra.* This claim, like those before it, affords Appellant no relief.

### 11. *Trial Counsel's Ineffectiveness*

Appellant next proffers a general claim that his trial counsel was ineffective for failing to object to each of the above-cited errors. For the reasons previously outlined in this opinion, he is not entitled to relief on this claim.

### 12. *Direct Appeal Counsel's Ineffectiveness*

In Appellant's final ineffectiveness claim, he argues that his direct appeal attorney was ineffective for failing to raise the above-cited errors, and that, combined with the fact that the attorney took a position with the York County District Attorney's office during his representation of Appellant, entitles him to the restoration of his direct appeal rights. He further alleges that his direct appeal counsel had no prior experience with murder cases, filed a "grossly inadequate" brief, spent "shockingly little" time on his case, and argues that counsel's conflict of interest in accepting a position with the district attorney's office, and actually beginning employment with the office before this Court's decision on his direct appeal was decided, "taint the fundamental fairness of the entire appellate review proceedings." Appellant's brief at 81. The PCRA court, in denying relief on this claim, made several specific findings. It first found that Appellant's appeal counsel's representation was adequate. It also refused to find that time spent and volume produced equated with effective representation. Finally, and significantly, it pointed out that Appellant had offered no evidence that he had been prejudiced by counsel's actions in accepting employment (to be commenced at a later date) with the district attorney's office. In his brief to this Court, Appellant cites to *Strickland v. Washington*, 466 U.S. 668, 692, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and argues that no showing of prejudice need be made and that prejudice is presumed under the circumstances.

Relief will not be granted on this claim. We first note that the Supreme Court in *Strickland*, in discussing effective assistance of counsel, stated that an actual conflict of interest adversely affecting a lawyer's performance renders assistance ineffective. *Id.* at 692, 104 S.Ct. 2052. No actual conflict of interest that adversely affected counsel's performance was

present in the instant matter because direct appeal counsel did not begin work in the district attorney's office until he had briefed and argued Appellant's case to this Court. See *Commonwealth v. Wakeley*, 433 Pa. 159, 249 A.2d 303 (1969), in which this Court denied a defendant's claim that, because his trial counsel had been acting district attorney at the time of the defendant's indictment, a conflict of interest existed. Also, Appellant has been represented by several additional attorneys since his direct appeal. Accordingly, in the circumstances presented instantly, Appellant is not entitled to the restoration of his direct appeal rights because of a claimed conflict of interest on the part of his direct appeal attorney.

## C. ALLEGATIONS OF TRIAL COURT ERROR

### 1. *Allegedly Inaccurate Sentencing Information*

In Appellant's next argument, he claims that the trial court did not give an accurate response to the jury question of "can we recommend life imprisonment with a guarantee of no parole?" N.T. 1/20/84 at 45. The court responded to the question as follows:

The answer to that is simply no, absolutely not. Moreover, ladies and gentlemen, you talk about recommendation. I don't know exactly what you mean, but I assume you remember what I told you before, that you as a jury at this point are not making a recommendation of death or life imprisonment. I hope you understand that.

You folks are actually fixing the sentence, and not the Court. It is not a recommendation. Whether you mark on there death, that's the sentence and there is nothing this Court can do about it. The Court has nothing to do on it. If you mark life imprisonment, there is nothing this Court can do about it or wants to do about it, because that decision is entirely up to you as members of the jury. So, I hope you understand that it is not a recommendation, it is a sentence that will bind all of us here to whatever you fix and it's going to have to be very simply death or life imprisonment. And the question of parole is absolutely irrelevant. I hope you understand that.

N.T. 1/20/84 at 45–46. Appellant claims that an accurate response to the question would have included an instruction that "life imprisonment" *always* means life imprisonment with a guarantee of no parole, and that "because the trial court supplied the jury with materially inaccurate sentencing information about the meaning of 'life imprisonment', the jury mistakenly believed that if it sentenced Appellant to life he would one day be eligible for parole." Appellant's brief at 38.

This argument has been previously litigated, rendering Appellant ineligible for PCRA relief on this claim under 42 Pa.C.S. § 9543. Specifically, this Court reviewed and rejected the claim, contained in Appellant's first PCRA petition, that trial counsel was ineffective for failing to object to the trial court's answer to the above-cited jury question because the trial court's explanation misled the jury into believing that if they handed down a life sentence there would be a possibility of parole. *See Commonwealth v. Carpenter*, 533 Pa. at 52, 617 A.2d at 1269.

### 2. *Ex Parte Communication*

 Next, Appellant requests relief on the claim that the trial court's ex parte communication with the prosecution violated his right to due process of law and deprived him of adequate appellate review of his conviction and sentence. He claims that, in the midst of trial, the court indicated that it had an ex parte communication with the District Attorney.

The following communication occurred in chambers, with Appellant and his attorney present, and concerned the testimony of Parole Officer Jefferies who had testified the previous day. Officer Jefferies had testified that he was a parole officer, without objection, and the trial court wished to provide Appellant an opportunity to request a cautionary instruction. The notes of testimony, with the trial court addressing Appellant specifically, read as follows:

> Now, in my research there is a case in the appellate court cases that that can be remedied, the fact that this was brought out, that it was a parole officer, it can be remedied by the Court instructing the jury that they are not to

consider that at all; that the issue of whether or not you are on parole, they are not to think about that; that that has absolutely nothing to do with your guilt or innocence. And I believe that you are entitled to such an instruction to the jury, and I want you to know that I will be glad to give it because I think you are entitled to it. And I, personally, think that you ought to have it for your own protection.

But, on the other side of the coin, I have talked to Mr. Flinchbaugh [Appellant's trial counsel] about it, and he is correct in some respects. He said that at this stage, it may be more prejudicial because the jury may not have picked it up; about parole, and they may have forgotten. So, at this late date, it may be more prejudicial to you to have the jury instructed on this parole business than not.

And that's the question that we have to decide. And the reason I want to talk to you on the record here with your counsel, and incidentally, Mr. Ness, the District Attorney, is not here. He has another engagement. *But I talked to him about what I was going to do.* I think in fairness and I'm trying to be fair to you, I think in fairness to you, I will leave the decision up to you. I will give you an opportunity to talk to Mr. Flinchbaugh about it. I will abide by your decision.

N.T. 1/19/84 at 3–4 (emphasis added).

Ex parte is defined as:

On one side only; by or for one party; done for, in behalf of, or on the application of, one party only. A judicial proceeding, order, injunction, etc., is said to be ex parte when it is taken or granted at the instance and for the benefit of one party only, and without notice to, or contestation by any person adversely interested.

Black's Law Dictionary (p. 517, 5th Ed.1979).

We first note the judge who had presided over Appellant's murder trial in 1984 was also the first judge to review Appellant's 1996 PCRA petition; the court was, therefore, personally familiar with the circumstance of the communication. The PCRA court, in its opinion discussing this claim, stated that it had:

a procedural issue that the court wanted to convey to counsel. Because the Commonwealth was unavailable to meet in chambers with [Appellant's] trial counsel, [Appellant] and the trial court, the court informed the Commonwealth of what the court was going to do. The trial court placed on the record that the court had talked to the Commonwealth prior to meeting with [Appellant's] trial counsel and [Appellant]. There was no ex parte communication of the case; instead, there was a procedural issue brought to counsel's attention in progression.

PCRA Court Opinion at 43–44.

We agree with the characterization of the court. This, coupled with the absence by Appellant of any claim of prejudice because of the communication, convinces us that this claim is without merit.[9]

### D. *MISCELLANEOUS CLAIMS*

#### 1. *Aggravating Circumstance*

■■■ Appellant next claims that his death sentence should be vacated because it was based on an aggravating circumstance (that Appellant had "a significant history of felony convictions involving the use or threat of violence to the person" 42 Pa.C.S. § 9711(d)(9)), which is unconstitutionally vague. Appellant cites to *Espinosa v. Florida*, 505 U.S. 1079, 112 S.Ct. 2926, 120 L.Ed.2d 854 (1992), in arguing that vague aggravating circumstances violate the Eighth Amendment because they fail appropriately to channel the discretion of the sentencer.

**9.** *See Commonwealth v. Barnyak*, 432 Pa.Super. 483, 639 A.2d 40 (1994), in which the Superior Court refused to grant a new trial on a defendant's claim of ex parte communications between the trial court and the Commonwealth's attorney because it found no evidence on the record that the trial judge was in any way influenced by the communication. In so doing the court stated that, "even if the ex parte communications were improper, in the absence of evidence of influence, there is no basis for the grant of a new trial." *Id.* at 492, 639 A.2d at 44. *See also Commonwealth v. Bradley*, 501 Pa. 25, 27, 459 A.2d 733, 734 (1983), wherein this Court held "that only those ex parte communications between a court and jury which are likely to prejudice a party will require reversal."

This Court has already reviewed and rejected the claim that the aggravating circumstance at 42 Pa.C.S. § 9711(d)(9) is unconstitutionally vague. *See Commonwealth v. Rivers*, 537 Pa. 394, 644 A.2d 710 (1994). Therefore, no relief is due on this claim.

### 2. *Notes of Testimony*

Appellant next argues that meaningful appellate review is impossible without a full and accurate transcript of the trial court proceedings, and then baldly states that the transcripts of his trial and sentencing proceedings are not full and accurate. He provides no further information or argument in support of this claim.

The PCRA court, in addressing this issue in its January 10, 1997 opinion, referred to its prior opinion of July 31, 1990, wherein it found as a fact that the trial transcript had not been altered by anyone to Appellant's detriment. Appellant has presented us with no reason to disturb this finding, and no reason to conclude that the transcripts provided are, in fact, not full and accurate.

### 3. *"Cumulative Error" Claim*

Appellant's penultimate claim is that, even if we find that he is not entitled to relief on any *particular* claim raised above, he is nevertheless entitled to relief because the cumulative effect of the errors was to deny him a fair trial. He cites no authority and makes no argument in support of this proposition. Further, the PCRA court determined that the record, taken in its totality, supported Appellant's conviction and sentence, and we have been presented with no reason to disturb that ruling.

### 4. *Evidentiary Hearing Claim*

Finally, Appellant argues that all claims raised in his PCRA petition require an evidentiary hearing for a full and fair resolution of the issues.

The Pennsylvania Rules of Criminal Procedure, in effect at the time Appellant filed his PCRA petition, provided that the PCRA judge should order a hearing on all material

issues of fact raised in the petition and answer. Pa.R.Crim.P. 1508. However, Rule 1507 ("Disposition Without Hearing") provided at subsection (a) that "[i]f the judge is satisfied from [his or her] review [of the record] that there are no genuine issues concerning any material fact and that the defendant is not entitled to post-conviction collateral relief, and that no purpose would be served by any further proceedings", a hearing is not required. "The purpose of Rules 1507 and 1508 is to assure that an evidentiary hearing be held on a post-conviction petition if there are factual issues to be resolved. However, where there are no disputed factual issues, an evidentiary hearing is not required under the rules." *Commonwealth v. Morris*, 546 Pa. 296, 306–07, 684 A.2d 1037, 1042 (1996) (citation omitted). In addition, if a petition presents some issues that require a hearing and some that do not, Rule 1507(c) provides that the judge "may dispose of only part of a motion without a hearing by ordering dismissal of or granting relief on only some of the issues raised, while ordering a hearing on the other issues."

In the instant matter, the PCRA court, after review of the pleadings, dismissed the majority of Appellant's claims without a hearing. The court did however order a hearing on the claims that the Commonwealth knowingly withheld exculpatory evidence and knowingly presented false testimony through the witness Ms. Emmil. The hearing was held on March 18, 1997, at the end of which the court found as a fact that the Commonwealth did not knowingly withhold any exculpatory evidence or present false evidence through its handling of Ms. Emmil. Accordingly, in view of the fact that the PCRA court did grant Appellant an evidentiary hearing on those issues that raised material issues of fact, he is not entitled to relief on his final claim.

## IV. *CONCLUSION*

After reviewing each of Appellant's claims, we find no basis on which to grant him relief. Accordingly, we affirm the orders of the PCRA court.

Justice NIGRO files a Concurring Opinion.

NIGRO, Justice, concurring.

I join the majority opinion, but write separately to address Appellant's claim that Ms. Enriquez's testimony regarding statements made by Ms. Emmil were inadmissible hearsay.

During the prosecutor's examination of Ms. Enriquez, he asked her what Ms. Emmil had said to her on the evening of the killing. Ms. Enriquez responded: "She [Ms. Emmil] said she seen [Appellant] go in his pocket and do something with the knife and clean it off and throw it over the fence." N.T. 1/18/84 p. 74. I agree with the majority's holding in footnote 8 that Ms. Enriquez's response did not violate the Confrontation Clause since Ms. Emmil testified and was cross-examined by Appellant at his trial. Likewise, since Ms. Emmil testified at trial, I would suggest that Ms. Enriquez's testimony as to Ms. Emmil's out of court statement was properly admitted into evidence, regardless of whether it meets an exception to the hearsay rule.