J-S20019-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TIMOTHY AARON SCHELL | : | |
| | : | |
| Appellant | : | No. 1239 MDA 2023 |

Appeal from the PCRA Order Entered August 4, 2023
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-CR-0005272-2017

BEFORE: OLSON, J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KUNSELMAN, J.:                    **FILED: JULY 2, 2024**

Timothy Aaron Schell appeals *pro se* from the order denying his first petition filed pursuant to the Post Conviction Relief Act ("PCRA"). 42 Pa.C.S.A. §§ 9541-46. We affirm.

In 2018, Schell was convicted of robbery, conspiracy to commit burglary, and related offenses. In his direct appeal, this Court summarized the pertinent facts and trial proceedings as follows:

> On July 29, 2017, after a night of heavy drinking at the local [VFW], Schell and his longtime girlfriend/paramour, Andrina Shutt, ran out of money. Schell wanted more money to play poker the next day. They decided that Shutt would drive to [Carlos] Molina-Silva's nearby apartment and have sex with him for money.
>
> Shutt had a day job, but was also a prostitute. She claimed at trial that if she refused to have sex with other men for money,

---

[*] Former Justice specially assigned to the Superior Court.

Schell became "extremely physically and mentally abusive." Shutt testified that she had also known Molina-Silva for twelve years. After initially agreeing to Schell's plan, Shutt changed her mind, and refused. She also became ill.

Shutt called Schell on her cell phone from Molina-Silva's bathroom. She informed Schell that she was not going through with the plan to have sex with Molina-Silva. They argued. Finally, Shutt told Schell to get the money himself. Schell agreed.

Schell entered the apartment with his face partially obscured by a tee shirt wrapped as a bandana. [Schell, who testified in his own defense,] contended that Shutt let him into the apartment. Molina-Silva testified that he did not know Schell and had never invited Schell into his apartment.

After entering the apartment, Schell punched Molina-Silva, knocking him down, and demanded money; he put a knife to Molina-Silva's throat and threatened to kill him if he did not provide more. In the struggle, Schell's tee shirt/bandana worked loose, and Molina-Silva was able to see Schell's entire face. After Molina-Silva provided the money, Schell left. [Molina-Silva] waited a day, but finally reported the incident to the police.

At trial, defense counsel objected when the prosecutor brought up the abusive relationship in the Commonwealth's opening statement, as a reference to prior bad acts, not permitted under the Rules of Evidence. The trial court denied counsel's motion for a mistrial. Defense counsel also objected to the prosecutor's statement that in the course of the many taped prison conversations with Shutt that were played at trial, Schell never said he was innocent. Defense counsel argued that the prosecutor's remark shifted the burden of proof to the defense. However, counsel declined the trial court's offer of a special curative instruction. The trial court gave a standard, comprehensive instruction on the burden of proof, and the presumption of innocence, repeating the preliminary instruction it had given at the beginning of trial.

The jury convicted Schell of all charges. The trial court imposed an aggregate sentence of not less than thirteen nor more than twenty-six years of incarceration at a state correctional institution.

*Commonwealth v. Schell*, 222 A.3d 883 (Pa. Super. 2019) (non-precedential decision at 2-4 (footnotes and citations omitted)).

Schell appealed to this Court, and raised issues challenging: 1) the sufficiency of the evidence supporting this conspiracy to commit burglary conviction; 2) the denial of a mistrial during the prosecutor's opening statement; and 3) the failure to grant counsel's objection to the prosecutor's closing argument. Finding no merit to any of these issues, we affirmed Schell's judgment of sentence on October 29, 2019. *Schell*, *supra*. On May 5, 2020, our Supreme Court denied Schell's petition for allowance of appeal. *Commonwealth v. Schell*, 232 A.3d 563 (Pa. 2020).

Schell filed a timely *pro se* PCRA petition on March 22, 2021. The PCRA court appointed counsel. On August 29, 2021, PCRA counsel filed a "no-merit" letter and motion to withdraw pursuant to *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988), and *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988) (*en banc*). On November 18, 2021, the PCRA court issued a Pa.R.Crim.P. 907 notice of its intent to dismiss Schell's petition as meritless. Despite the PCRA court granting Schell time extensions spanning the next two years, Schell never filed a response. By order entered August 3, 2023, the PCRA court denied Schell's petition. This appeal followed. Both Schell and the PCRA court have complied with Pa.R.A.P. 1925.

Schell raises nine issues, which we rephrase as follows:

I.     Did a violation of *Brady v. Maryland*, 373 U.S. 83 (1963), occur when, although no formal deal may have been struck with Shutt, the facts strongly suggested that there were

- 3 -

obvious discrepancies between Schell's and Shutt's testimonies and/or statements and Shutt was the primary witness in the prosecution's case? Thus, Schell had the right to be informed of the discussions before trial.

II.    Was trial counsel ineffective when he failed to object and present a defense when Detective Gary Rux made inconsistent statements?

III.   Did the trial court err when it allowed Shutt's testimony as to Schell's prior bad acts into evidence?

IV.    Did the trial court err by denying Schell's motion for mistrial during the Commonwealth's opening statements?

V.     Did the prosecutor commit prosecutorial misconduct when jury tampering occurred?

VI.    Did the Commonwealth present insufficient evidence to support Schell's robbery conviction?

VII.   Did the PCRA court err when it denied Schell's motions for new counsel; compel discovery pursuant to Pa.R.Crim.P. 573(a); release of exhibits, reopen record pursuant to Pa.R.Crim.P. 227.1(a)(5) [sic]; and motion to extend time?

VIII.  Should PCRA counsel be found ineffective due to filing false *Turner*/*Finley* letters?

IX.    Was the trial court overzealous by allowing the prosecutor leeway, that instead of the witness being questioned, he was provided pre-rehearsed testimony?

*See* Schell's Brief at 3. To the extent each issue is properly before us, we will address them in order.

This Court's standard of review for an order denying a PCRA petition calls for us to "determine whether the ruling of the PCRA court is supported by the evidence and free of legal error. The PCRA court's factual findings will not be disturbed unless there is no support for the findings in the certified

record." ***Commonwealth v. Webb***, 236 A.3d 1170, 1176 (Pa. Super. 2020) (citing ***Commonwealth v. Barndt***, 74 A.3d 185, 191–92 (Pa. Super. 2013)).

Moreover, to be eligible for post-conviction relief, a petitioner must plead and prove by a preponderance of the evidence that his conviction or sentence resulted from one or more of the enumerated errors or defects in 42 Pa.C.S.A. section 9543(a)(2), and that the issues he raises have not been previously litigated. ***Commonwealth v. Carpenter***, 725 A.2d 154, 160 (Pa. 1999). An issue has been "previously litigated" if the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue, or if the issue has been raised and decided in a proceeding collaterally attacking the conviction or sentence. ***Carpenter***, 725 A.2d at 160; 42 Pa.C.S.A. § 9544(a)(2), (3). If a claim has not been previously litigated, the petitioner must then prove that the issue was not waived. ***Carpenter***, 725 A.2d at 160. An issue will be deemed waived under the PCRA "if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal, or in a prior state post-conviction proceeding." 42 Pa.C.S.A. § 9544(b).

In his first issue, Schell asserts that a ***Brady*** violation occurred when the Commonwealth failed to reveal whether a plea deal was offered and/or discussed with Shutt. Because Schell could have, but failed to raise this claim on direct appeal, it is waived under the PCRA. ***Carpenter***, ***supra***. Moreover, at trial, Shutt averred that no promises had been made in exchange for her

trial testimony and defense counsel had the opportunity to cross-examine her. Schell cites no authority for his claim that **Brady** required the Commonwealth to disclose all of the conversations it had with Shutt so that he could adequately cross-examine her. **See** Schell's Brief at 8. Schell's first issue fails.

In his second issue, Schell asserts that trial counsel was ineffective for failing to object and present a defense when Detective Rux made inconsistent statements. According to Schell, Detective Rux made a "false statement" under oath when he testified that he showed Molina-Silva a photo lineup on August 1, 2017, when the actual document admitted into evidence was printed the next day.

This claim alleges the ineffectiveness of trial counsel. To obtain relief under the PCRA premised on a claim that counsel was ineffective, a petitioner must establish, by a preponderance of the evidence, that counsel's ineffectiveness so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. **Commonwealth v. Johnson**, 966 A.2d 523, 532 (Pa. 2009). "Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner." **Id.**

The tripartite test we apply is well-settled, and each prong of the test has been explained as follows:

The burden is on the [petitioner] to prove all three of the following prongs: (1) the underlying claim is of arguable merit; (2) that counsel has no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.

We have explained that a claim has arguable merit where the factual averments, if accurate, could establish cause for relief. Whether the facts rise to the level of arguable merit is a legal determination.

The test for deciding whether counsel had a reasonable basis for his action or inaction is whether no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success. Counsel's decisions will be considered reasonable if they effectuated his client's interests. We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken.

Prejudice is established if there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Commonwealth v. Sandusky*, 203 A.3d 1033, 1043-44 (Pa. Super. 2019) (citations omitted; formatting altered).

Initially, we note that this issue is waived because Schell did not raise this ineffectiveness claim in his *pro se* PCRA petition. *See* Pa.R.Crim.P. 902(B); *Commonwealth v. Miller*, 231 A.3d 981, 991 (Pa. Super. 2020). As such, neither PCRA counsel nor the PCRA court addressed it. Moreover, Schell cannot establish how he was prejudiced. Even if Detective Rux intentionally misstated the date he showed the photo lineup to Molina-Silva, the jury was free to believe Rux's testimony that Molina-Silva identified Schell as the perpetrator of the crimes at issue. The jury could have determined that the

date was insignificant. Thus, even if not waived, this claim would not entitle Schell to post-conviction relief.

In his third issue, Schell claims that the trial court erred in allowing Shutt to testify regarding prior bad acts he committed against her because the Commonwealth did not give proper notice before trial. *See* Pa.R.E. 404(b).[1] As Schell could have, but did not, raise this claim on direct appeal, it is considered waived under the PCRA. *Carpenter*, *supra*. In addition, this claim is waived because it was not raised in Schell's *pro se* PCRA petition. Rule 902(B), *supra*.

In his fourth issue, Schell claims that the trial court erred in denying his motion for a mistrial after the prosecutor referred to Shutt's abusive relationship with him during his opening statement. This claim was previously litigated on direct appeal. *Carpenter*, *supra*. Although this Court did not directly review the claim because, at that time, the opening statements were not transcribed, we nonetheless adopted the trial court's rationale that the defense motion was properly denied. The trial court found no need for a mistrial because the reference did not constitute evidence, it merely described what the Commonwealth intended to present, "which the Commonwealth later

---

[1] In the argument section of his brief Schell addresses his third and fourth issues as stated above in reverse order.

did, without objection." **Schell**, (non-precedential decision at 6).[2] Thus, this claim fails.

In his fifth issue, Schell asserts that prosecutorial misconduct occurred in the form of jury tampering. Because this claim could have been raised on direct appeal, it is waived under the PCRA. **Carpenter**, **supra**. In his supporting argument, Schell also refers to trial counsel's ineffectiveness for failing to conduct "an investigation to determine whether there was [a] relationship" between a specific juror and the prosecution. This claim is waived because it is being raised for the first time on appeal. **See generally**, Pa.R.A.P. 302(a). Schell's fifth issue entitles Schell to no relief.

In his sixth issue, Schell asserts that the Commonwealth presented insufficient evidence to support his robbery conviction. Because this claim could have been raised on direct appeal, it is waived under the PCRA. **Carpenter**, **supra**. Nonetheless, we note that the trial court rejected Schell's challenge:

> [Schell] entered Mr. Molina-Silva's apartment with a t-shirt or cloth obscuring his face, grabbed a knife from the kitchen, threatened Mr. Molina-Silva with the knife, and demanded Mr. Molina-Silva give him money. Mr. Molina-Silva said he did not have any money. [Schell] was not happy with the response; therefore, he patted Mr. Molina-Silva down and forcibly removed $200-$250 in cash from Mr. Molina-Silva's pants pocket.

---

[2] The Commonwealth's opening statement has since been transcribed. The prosecutor made the one reference to the relationship, the objection occurred, and, after a sidebar conference, the prosecutor did not mention it again. **See** N.T., 8/28/18, at 5.

Trial Court Opinion, 1/22/19, at 9. Although Schell had raised this sufficiency challenge in his Rule 1925(b) statement, he abandoned the claim on direct appeal. In his PCRA appellate brief, Schell relies on his own testimony concerning the incident. Given the guilty verdicts, it is clear that the jury rejected his version of events. Thus, Schell's sixth issue fails.

In his seventh issue, Schell asserts that the PCRA court erred when it denied various motions he filed once PCRA counsel was permitted to withdraw. This issue provides no relief. Regarding his motion for new counsel, we note that once appointed counsel is permitted to withdraw following the filing of a no-merit letter, the PCRA petitioner is not entitled to another attorney. *See Commonwealth v. Shaw*, 217 A.3d 265, 268 n.3 (Pa. Super. 2019). As to his motion to reopen the record, Schell inappropriately relies upon the Pennsylvania Rules of Civil Procedure. Schell's motion for discovery incorrectly relies upon Pa.R.Crim.P. 573(A), when Pa.R.Crim.P. 902(E) provides that, in post-conviction actions, "no discovery shall be permitted at any stage of the proceedings, except upon leave of court after a showing of exceptional circumstances." Schell made no such showing.[3] Thus, these claims of error are meritless.

In his eighth issue, Schell raises a claim of PCRA counsel's ineffectiveness. This claim is properly before us. *See generally*, *Commonwealth v. Bradley*, 261 A.3d 381 (Pa. 2021). However, this claim

---

[3] This same rationale applies to Schell's request for the release of exhibits.

is patently undeveloped. Rather than raise any specific issue PCRA counsel overlooked, Schell asserts that PCRA counsel "has [a] long and blatant history of filing no merit" *Turner*/*Finley* letters at an uncanny rate." Schell's Brief at 17. This allegation, along with the additional claim that the "suspicious volume" by counsel "needs to be investigated," affords Schell no relief.

In his ninth and final claim on appeal, Schell asserts that the trial court erred and/or abused its discretion when it permitted the prosecutor to ask leading questions of Molina-Silva. Because Schell did not raise this claim on direct appeal, it is waived under the PCRA. *Carpenter*, *supra*. Once again, although he raised the claim in his Rule 1925(b) statement, Schell did not pursue the claim in his direct appeal.

Even if not waived, Schell's claim lacks merit. As the trial court recognized:

> The extent to which a Court tolerates leading questions, or suggests how questions asked by counsel should be phrased or rephrased so as to avoid error, and the extent to which the trial Judge himself elicits information, are matters within the discretion of the trial Judge and [the appellate court] will not reverse his exercise of discretion except in cases of clear abuse.

Trial Court Opinion, 1/22/19, at 17 (quoting *Commonwealth v. Glockley*, 192 A.2d 693, 702 (Pa. 1963). The trial court noted that Molina-Silva's primary language is Spanish, and that he used an interpreter for his testimony.

According to the trial court, "due to the language barrier between the Commonwealth and the witness, as well as having an interpreter, some

- 11 -

degree of leading questions was necessary in order for the information to come in." Trial Court Opinion, 1/22/19, at 18. After reviewing Molina-Silva's direct testimony, we find no abuse of discretion. Schell's claim that Molina-Silva's testimony was "pre-rehearsed" is refuted by the record. **See** N.T., 8/28/18, at 52, 77 (Molina-Silva denying on cross-examination that he was just saying what the prosecutor told him to say; on redirect Molina-Silva testified that the prosecutor just told him to tell the truth).

In sum, many of Schell's issues are either waived, previously litigated, undeveloped, or raised for the first time on appeal. To the extent any issue is properly preserved, it lacks merit. Thus, we affirm the court's order denying Schell post-conviction relief.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 07/02/2024