639 A.2d 40

**COMMONWEALTH of Pennsylvania,**

v.

**Richard L. BARNYAK, Appellant.**

Superior Court of Pennsylvania.

Argued June 23, 1993.

Filed Jan. 25, 1994.

Reargument or Reconsideration Denied March 30, 1994.

486

John R. Carfley, Philipsburg, for appellant.

J. Karen Arnold, Asst. Dist. Atty., Bellefonte, for Com., appellee.

Before ROWLEY, President Judge, and TAMILIA and POPOVICH, JJ.

ROWLEY, President Judge:

Richard L. Barnyak appeals from the judgment of sentence imposed following his conviction for aggravated assault, simple assault, recklessly endangering another person, and terroristic threats. Upon review of the variety of issues raised on appeal, we affirm the judgment of sentence.[1]

---

1. The memorandum decision filed on September 7, 1993, which reversed the judgment of sentence, was withdrawn by this panel pursuant to an order dated October 25, 1993.

The charges against appellant arose from a domestic dispute in which Kathy Dixon, now Kathy Barnyak, appellant's wife, was shot in the hand. The incident occurred on April 21, 1990, at approximately 2:00 a.m. Ms. Dixon was admitted to the hospital for treatment at 2:35 a.m. and was initially interviewed there by a police officer at approximately 3:10 a.m. While present at the hospital, Ms. Dixon's son and nephew also made statements to the officer regarding the shooting incident. The out-of-court statements of Ms. Dixon, her son, and her nephew were introduced at trial as substantive evidence.

Ms. Dixon and her son were subpoenaed to appear in court at the time of trial and there reiterated, in the presence of the jury, a prior refusal to testify against appellant. Both were held in contempt and incarcerated by the trial judge until the conclusion of the Commonwealth's case. Appellant was convicted of the offenses named above and was acquitted on charges of attempted first and third degree murder. The trial court denied appellant's motions for a new trial and in arrest of judgment, his petition for reconsideration, and his motion to modify sentence. We consider, in order, the issues he has raised on appeal.

First, appellant argues that out-of-court statements made at the hospital by the victim and other witnesses were improperly admitted at trial under the excited utterance exception to the hearsay rule. The statements were introduced through the testimony of Trooper Paul Yuhouse who interviewed Ms. Dixon, her son, and her nephew at the hospital. Trooper Yuhouse did not have an independent recollection of the interviews, but testified with reference to field notes. Before considering the hearsay issue raised, we address appellant's allegation that Trooper Yuhouse could not "accurately attribute any of the statements [recorded in the field notes] to any one particular individual." Brief of Appellant at 15. We find this allegation without basis in the record.

Prior to relating the statements made to him at the hospital, Trooper Yuhouse was specifically asked by the Com-

monwealth's attorney i) "did Ms. Dixon make statements to you ... and if so could you tell the jury what those statements were?" N.T. 3/11/91 at 43; ii) "Do you recall what statements Mr. Bumbarger [Ms. Dixon's son] made to you relative to what happened?" *Id.* at 44; and iii) "With respect to Raymond Smeal [Ms. Dixon's nephew], you indicated you had also spoken with him? . . . . What statements did he make relative to what had occurred that night?" *Id.* at 46. Our review reveals that Trooper Yuhouse testified with specificity as to what each individual told him. This was evident from the fact that each individual's rendition of the events was from the vantage point of that individual. Because we conclude that Trooper Yuhouse did attribute the statements recorded in his field notes to each particular individual, we can consider whether these statements were properly admitted as excited utterances with respect to each speaker.

■ Appellant generally cites the following factors, among others, as persuasive that none of the statements qualify as excited utterances: 1) the statements were not made sufficiently close in time to the startling event; 2) the site of the startling event was remote from the hospital where the statements were made. We also note that the statements were made in response to police questioning. Even so, these factors are not preclusive to a finding of an excited utterance. *See Commonwealth v. Von Smith,* 303 Pa.Super. 534, 450 A.2d 55 (1982) (although victim died, death of speaker not required for admission of excited utterance).

■ The following relevant circumstances support the conclusion that the statements made by Ms. Dixon and her son qualified as excited utterances. *See Commonwealth v. Hess,* 270 Pa.Super. 501, 411 A.2d 830 (1980) (spontaneous declaration made when experiencing overpowering emotion in response to an unexpected or shocking event). On April 21, 1990 at approximately 2:00 a.m., appellant and Ms. Dixon were drunk and arguing inside the trailer they shared. N.T. 3/11/93 at 96 (Test. of Trooper Robert Snook, investigating officer testifying to statements made to him by appellant), and

N.T. 3/12/93 at 14 (Test. of appellant Richard Barnyak). Ms. Dixon's son, Douglas Bumbarger, and her nephew, Raymond Smeal, were present in the trailer throughout the heated and physical argument. N.T. 3/11/93 at 58–62 (Test. of Raymond Smeal).

Appellant and Ms. Dixon continued arguing, pulling one another's hair, and moved toward the master bedroom away from the area where the son and nephew were. N.T. 3/11/93 at 96 (Test. of Trooper Snook). Appellant entered the master bedroom but testified that he was unsure whether he or Ms. Dixon, who had not entered the room, closed the door behind him. N.T. 3/12/93 at 25 (Test. of Appellant). Ms. Dixon's son went back toward the bedroom, then ran back to the area where the nephew was. N.T. 3/11/93 at 61 (Test. of Raymond Smeal). Appellant picked up his gun from the dresser, pointed at the closed bedroom door and fired. N.T. 3/11/93 at 97 (Test. of Trooper Snook).

Four gunshots were fired through the door. *Id.* A fifth shot was fired directly above the doorknob and struck Ms. Dixon in the hand. *Id.* After appellant fired at the doorknob, he heard Ms. Dixon scream "oh, my hand," N.T. 3/12/93 at 27 (Test. of Appellant), then fired one round through the bedroom wall after he heard her screaming, N.T. 3/11/93 at 97–98 (Test. of Trooper Snook). Appellant did not pause at any time between the shots, and he emptied the gun. N.T. 3/12/93 at 25 (Test. of Appellant). Once the shots were fired and the son and nephew heard Ms. Dixon scream, the son ran back down the hallway. N.T. 3/11/93 at 61–62 (Test. of Raymond Smeal). Ms. Dixon, her son and nephew then left the trailer and went to the car which the nephew had started. *Id.* at 62. Ms. Dixon was yelling "my hand," and her son was yelling at appellant from outside "you'll pay for this you son of a b——." *Id.;* N.T. 3/12/93 at 49 (Test. of Appellant).

Dr. Howard Bursh, the emergency room physician who treated Ms. Dixon shortly thereafter,[2] testified that she was pale and obviously frightened. N.T. 3/11/93 at 16. Her pulse

---

2. As stated earlier, the incident occurred at approximately 2:00 a.m. and Ms. Dixon was admitted for medical treatment at 2:35 a.m.

was elevated; her blood pressure was markedly elevated; and her pupils were dilated. *Id.* Dr. Bursh administered an injection of an antianxiety agent because Ms. Dixon seemed to be "really panic stricken." *Id.* at 25. The emergency room nurse, Judy Pleskonko, further testified that Ms. Dixon was crying and saying she could not believe this had happened to her. *Id.* at 27–28. When Trooper Yuhouse arrived to interview Ms. Dixon, her son, and her nephew, he observed that all of them were excited and upset that Ms. Dixon had been shot. *Id.* at 42. Nurse Pleskonko testified that Ms. Dixon was still upset when she left treatment from the emergency room at 4:45 a.m.

■ Considering the involvement of Ms. Dixon and her son in the shooting incident, and considering the mother/son relationship between the two, we have no difficulty finding that their statements at the hospital were declarations made while experiencing overpowering emotion caused by a shocking event. Therefore, the trial court did not abuse its discretion by admitting them as excited utterances. With respect to the nephew, Raymond Smeal, who had less involvement with the incident and a more distant relationship with Ms. Dixon, there might be some question about whether his statements also qualified. Even so, Raymond Smeal did testify at appellant's trial, and the statements he made at the hospital to Trooper Yuhouse were covered by his own testimony. Consequently, even if the admission of Smeal's statements was error, it was harmless error because the content of the statements was testified to by Smeal as well as by other trial witnesses, i.e., Trooper Snook, appellant, the emergency room physician and nurse. *See Commonwealth v. Foy,* 531 Pa. 322, 612 A.2d 1349 (1992) (no grounds for a new trial when error of admission harmless).

In his second issue, appellant claims the trial court erred in its denial of the wife/victim's motion to quash a subpoena and motion for a protective order. In support of this issue, appellant argues that *Commonwealth v. Hatfield,* 406 Pa.Super. 139, 593 A.2d 1275 (1991), *aff'd,* 610 A.2d 466, 530 Pa. 590

(Pa.1992), is "inconsistent" with the court's disposition of the motions in this case.

When a subpoena to testify has been challenged and no privilege to avoid testifying exists, whether "to force the unwilling spouse to give evidence" is a discretionary question for the trial court. *Id.* 406 Pa.Super. at 142, 593 A.2d at 1276. The disposition of the discretionary question in *Hatfield* is not inconsistent with the disposition of the discretionary question in this case. As required, the court in *Hatfield* based its decision to quash the wife's subpoena on the unique facts and circumstances of that case. It was not an abuse of discretion for the same court to later refuse to quash the subpoena in this case merely because the court quashed the subpoena in *Hatfield*.

Appellant contends that ex parte communications transmitted from the Commonwealth's attorney to the trial judge prior to trial "may have convinced the court to decide this case contrary to the decision in *Hatfield*." Brief of Appellant at 21. We find no evidence in the record that the trial judge was influenced. Therefore, even if the ex parte communications were improper, in the absence of evidence of influence, there is no basis for the grant of a new trial.

Also, under this second issue, appellant argues that the court prejudicially required the wife/victim "to take the stand in open court in the presence of the jury and state her refusal to testify." [3] The Commonwealth states in response to this argument that "this issue was never raised in post verdict motions and is accordingly waived." Upon examination of the record, we agree with the Commonwealth. Within appellant's

---

3. Kathy Barnyak testified in the presence of the jury as follows:
   Q. Mrs. Barnyak, do you know an individual named Richard Barnyak?
   A. I do not wish to testify against my husband.
   Q. You're stating that you know—
   A. I'm stating that I'm not saying nothing against him.
   N.T. 3/11/91 at 178–79. The court then explained to Mrs. Barnyak that she did not have a legal privilege not to testify. Upon her persistent refusal, the court excused the jury and determined to incarcerate Mrs. Barnyak for contempt of court. *Id.* at 180–81.

post-trial motion for a new trial, he alleges that the trial judge "[f]ailed to permit the defendant and/or the alleged victim to assert a privilege not to testify under § 5913 and § 5914 of the Judicial Code." [4] This allegation of error does not encompass the issue of whether it was prejudicial to require the victim to take the stand and state her refusal to testify before the jury. Considering the additional fact that the trial court did not have the opportunity to address the issue, it is waived on appeal. *See* Pa.R.Crim.P. 1123(c)(3).

Appellant's third issue argues that his conviction on the charge of aggravated assault, 18 Pa.C.S.A. § 2702(a)(1), was inconsistent with his acquittal on the charges of attempted murder of the first, 18 Pa.C.S.A. § 2502(a), and third, 18 Pa.C.S.A. § 2502(c), degree. He claims these crimes have identical elements of intent, and therefore the acquittal on the attempted murder charges also should have resulted in an acquittal on the charge of aggravated assault. First, attempted murder of the first degree requires a specific intent to kill, which a conviction for aggravated assault obviously does not require.

Next, it does appear that the portion of the verdict acquitting appellant of attempted third degree murder [5] and convicting him of aggravated assault might be inconsistent, particularly with respect to the elements of intent. The conviction in this case for aggravated assault, section 2702(a)(1), was based on the jury's finding that appellant attempted to cause serious bodily injury to his wife, i.e., that he specifically intended to cause her serious bodily injury. Comparatively, the court instructed the jury that conviction for third degree murder would require a finding of "malice." The court defined malice to include "an intent to inflict serious

4. 42 Pa.C.S.A. § 5913 (1993), Spouses as witnesses against each other.
   42 Pa.C.S.A. § 5914, Confidential communications between spouses.

5. Although appellant does not raise the issue, we must also note that there is no crime of attempted third degree murder. *See Commonwealth v. Spells*, 417 Pa.Super. 233, 237, 612 A.2d 458, 460 n. 5 (1992); *Commonwealth v. Griffin*, 310 Pa.Super. 39, 50, 456 A.2d 171, 177 (1983).

bodily harm." N.T. 3/12/91, at 143. In spite of the fact that the intent elements of the two charges overlap, we will not disturb the verdict on the basis of the apparent inconsistency in result where we find the evidence sufficient to support the guilty verdict. *See Commonwealth v. Boyles,* 407 Pa.Super. 343, 595 A.2d 1180 (1991), *allocatur denied,* 531 Pa. 651, 613 A.2d 556 (Pa.1992).

Fourth, appellant argues that certain evidence [6] was obtained as a result of an illegal search and seizure and therefore was improperly admitted at trial. The trial court held upon its examination of the record that appellant "did not file a Motion to Suppress or object at trial to the admission of this evidence," and therefore "such error, if any, is deemed to be waived." Opinion of Trial Court 9/14/92, at 4–5. A motion to suppress evidence must be made pretrial, unless "the opportunity did not previously exist, or the interests of justice otherwise require." Pa.R.Crim.P. 323(b); *Commonwealth v. Meischke,* 273 Pa.Super. 134, 416 A.2d 1126 (1979).

Appellant claims the following circumstances prevented him from being apprised of facts necessary to file a pretrial suppression motion: i) at the time the investigative team appeared at the crime scene, appellant was in custody and had no independent knowledge of the search and seizure event; ii) three other witnesses were likewise unaware of the circumstances giving rise to the event; iii) while appellant was aware that the search and seizure had occurred, he was not apprised in the pretrial proceedings of the exact sequence of events. Upon consideration of the record together with the parties' arguments, we find insufficient justification for the failure to file a timely objection to the legality of the search and seizure.

The fact that appellant was not personally aware of the facts surrounding the search and seizure does not mean

---

**6.** "The evidence complained of consists of physical evidence, measurements, photographs and other evidence relating to the interior of [appellant's and the victim's] trailer." Brief of Appellant at 31. Additional evidence complained of includes "the weapon allegedly used in this criminal incident" and "other items of evidence eventually introduced at trial." *Id.* at 32.

the opportunity to file a motion to suppress did not previously exist. Moreover, justice does not otherwise require us to address the question of the legality of the search and seizure where our review reveals that appellant's arguments [7] have no merit.

In his fifth issue, appellant argues that the Commonwealth failed to provide him with reasonable notice of its intention to seek a mandatory sentence under 42 Pa.C.S.A. § 9712(a). Appellant claims he was not provided with written notice of the Commonwealth's intent to proceed under section 9712(a) "until Friday, September 25, 1992, at approximately 3:30 o'clock P.M. when the District Attorney tele-faxed a letter to the office of defense counsel." Appellant further asserts that the "fax arrived after counsel had left the office for the weekend." Appellant was sentenced on Monday, September 28, 1992.

We cite the trial court's correct conclusion that sentencing under the statute was justified due to i) pre-trial discussions between the Commonwealth and defense counsel "regarding the Commonwealth's intent to seek the mandatory five-year sentence" and ii) the written notice provided prior to sentencing. Also, in response to appellant's argument that the Commonwealth failed to carry its burden of proof for application of the statute, we note that the "statute specifically provides that the court shall consider evidence from the trial, which in this instance would be sufficient to prove the use of a weapon." *Commonwealth v. Saksek,* 361 Pa.Super. 173, 522 A.2d 70 (1987).

Judgment of sentence affirmed.

7. Appellant's suppression arguments are as follows:
　　1) following a consensual entry into the trailer, an investigating officer exited the trailer, waited several hours for an investigative team, then reentered the premises without additional consent or exigent circumstances;
　　2) with only the consent of appellant's brother, a police officer entered and searched the property of appellant's father.
Brief of Appellant at 31–32.