J-S07008-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| FAQUAN HILL | : | |
| | : | |
| Appellant | : | No. 2940 EDA 2018 |

Appeal from the Judgment of Sentence Entered September 21, 2018
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0010471-2017

BEFORE:   NICHOLS, J., KING, J., and STRASSBURGER, J.[*]

MEMORANDUM BY KING, J.:                    **FILED APRIL 22, 2020**

Appellant, Faquan Hill, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his bench trial convictions for aggravated assault, simple assault, recklessly endangering another person, and possessing instruments of crime.[1]  We affirm.

In its opinion, the trial court accurately set forth the relevant facts and procedural history of this case.  Therefore, we have no reason to restate them.[2]

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2702; 2701; 2705; 907, respectively.

[2] We clarify that the written sentencing order confirms the trial court imposed the probationary sentences concurrent to each other but consecutive to the terms of incarceration, not concurrent to the terms of incarceration as stated on the first page of the court's opinion.

Appellant raises two issues for our review:

DID THE TRIAL COURT ERR AND/OR ABUSE ITS DISCRETION WHEN IT PERMITTED THE COMMONWEALTH TO PRESENT HEARSAY EXCITED UTTERANCE TESTIMONY FROM A POLICE OFFICER WHICH CONTAINED OUT OF COURT STATEMENTS FROM THE COMPLAINANT THAT ACCUSED APPELLANT OF ASSAULTING THE COMPLAINANT WHERE THE COMPLAINANT/DECLARANT DID NOT TESTIFY AT TRIAL?

IS THE SENTENCE IMPOSED UNDULY HARSH AND EXCESSIVE UNDER THE CIRCUMSTANCES OF THIS CASE AND AS APPLIED TO DEFENDANT/APPELLANT?

(Appellant's Brief at 5).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Daniel D. McCaffery, we conclude Appellant's issues merit no relief. The trial court opinion comprehensively discusses and properly disposes of the questions presented. (**See** Trial Court Opinion, filed April 15, 2019, at 5-11) (finding: **(1)** evidence showed Victim was distraught at time she told police Appellant was person who caused her injuries; Medic O'Donnell and Officer Hancock both testified Victim was distressed and upset when they arrived on scene and spoke to her; evidence showed Victim was still overwhelmed by what had occurred at time she related that Appellant had assaulted her; thus, Victim's statement qualified as excited utterance exception to rule against hearsay;[3]

---

[3] Appellant's alternative Confrontation Clause argument is waived, as he did not specify this claim at trial, in his written post-sentence motion, or in his

- 2 -

**(2)**[4] sentence imposed was not excessive under circumstances; court considered Appellant's rehabilitative needs; court listened to defense counsel's proffered mitigating factors; court also reviewed pre-sentence investigation report, which detailed Appellant's history of domestic abuse; justice demanded severe sentence where Appellant attacked Victim in her apartment using hammer while their child was present; aggregate sentence on all crimes was lenient given underlying facts and importance of protecting public from violence). Accordingly, we affirm on the basis of the trial court's opinion.

Judgment of sentence affirmed.

Judge Nichols joins this memorandum.

Judge Strassburger concurs in the result.


*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*


Date: _4/22/2020_

---

Rule 1925(b) statement. **See** Pa.R.A.P. 302(a) (explaining issues not raised before trial court are waived on appeal).

[4] Initially, we observe that Appellant has satisfied the four-part test required to invoke our jurisdiction over his discretionary aspects of sentencing challenge. **See Commonwealth v. Evans**, 901 A.2d 528, 533 (Pa.Super. 2006), *appeal denied*, 589 Pa. 727, 909 A.2d 303 (2006).

**IN THE COURT OF COMMON PLEAS PHILADELPHIA**
**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**
**TRIAL DIVISION-CRIMINAL SECTION**

COMMONWEALTH OF PENNSYLVANIA     : PHILADELPHIA COURT
    : OF COMMON PLEAS
    : CRIMINAL TRIAL DIVISION
    :
    v.     : CP-51-CR-0010471-2017
    :
    :
    :
FAQUAN HILL     : **FILED**
    :
    : APR 1 5 2019
    :
    Office of Judicial Records
    Appeals/Post Trial
**OPINION**

**MCCAFFERY, J**

Faquan Hill (hereinafter Appellant) appeals from the judgment of sentence imposed on September 21, 2018. For the reasons set forth below, it is suggested that the judgments of sentence be affirmed.

**PROCEDURAL HISTORY**

Appellant was found guilty by this Court following a waiver trial on June 21, 2018, of Aggravated Assault, 18 Pa.C.S. § 2702, graded as a felony of the second degree, Simple Assault, 18 Pa.C.S. § 2701, Recklessly Endangering Another Person, 18 Pa.C.S. § 2705, and Possessing Instruments of Crime, Generally, 18 Pa.C.S. § 907. On September 21, 2018, following the denial of a Motion for Extraordinary relief, Appellant received concurrent sentences of incarceration of five to ten years and two and one-half to five years on the Aggravated Assault and Possessing Instruments of Crime charges, respectively. Sentences of two years' probation were imposed on the remaining charges which were ordered to run concurrently with the sentences of

1

incarceration. Appellant thereafter filed post-sentence motions and when they were denied, Appellant filed a notice of appeal and a court-ordered Pa.R.A.P 1925(b) Statement.

## FACTUAL HISTORY

On November 26, 2017, at 1:48 a.m., Mr. Mark O'Donnell, a paramedic employed by the City of Philadelphia, responded to a call at 2819 North Broad Street in Philadelphia. (N.T. 6/21/18, 13-15). Upon arrival, he heard someone screaming inside the residence. Accompanied by a police officer, he went to the third floor of the residence and, as he entered, heard screams as he proceeded up the stairs. (N.T. 6/21/18, 17-18). In the hallway outside an apartment, Mr. O'Donnell saw a bloody hammer and blood on the walls. (N.T. 6/21/18, 18, 25-26).

Mr. O'Donnell went into the apartment and encountered K.L., the complainant herein, holding a baby while leaning against a wall. (N.T. 6/21/18, 18).[1] K.L, who was quite upset, had a wound to her left temple cause by blunt force trauma that was still bleeding. (N.T. 6/21/18, 19-21). When Mr. O'Donnell took the baby from her, K.L. related that she had been kicked and punched and hit in her head with a hammer. (N.T. 6/21/18, 23-24). Mr. O'Donnell treated the wound to her head and transported her by ambulance to Temple University Hospital. (N.T. 6/21/18, 26-27).

Philadelphia Police Officer Shawn Winton was on duty the night of the incident and was also directed to 2819 North Broad Street. When the officer arrived, other police officers and medics were already on the scene. (N.T. 6/21/18, 37). One of the officers present was watching Appellant, who was sitting on the steps. (N.T. 6/21/18, 38).

Officer Winton recovered the hammer and assisted in the arrest of Appellant for domestic abuse. Appellant asked the officer why he was being arrested. (N.T. 6/21/18, 38-40). Appellant then told the officer multiple stories including that that he had been pushed down the steps and

---

[1] K.L. did not appear for trial despite being subpoenaed to do so.

2

had been struck in the chest with a hammer by K.L. (N.T. 6/21/18, 39-41, 43-44, 48). Officer Winton examined Appellant for injuries but did not observe any. (N.T. 6/21/18, 41). Winton observed some blood on Appellant's shirt, which Appellant claimed resulted from his having been struck with a hammer. (N.T. 6/21/18, 41).

Philadelphia Police Officer Courtney Hancock was the first police officer to arrive at the scene. (N.T. 6/21/18, 41). She proceeded there after receiving a radio call, at about 1:45 a.m., directing her to go to the location to investigate a report of a person with a weapon. (N.T. 6/21/18, 41). Upon arrival, the officer heard a man and a woman arguing inside the building, so she entered the residence to investigate. (N.T. 6/21/18, 54-56). Once inside, she encountered the complainant on a staircase located between the second and third floors of the building. (N.T. 6/21/18, 56, 60). The complainant was holding her head, which had a gash on it that was still bleeding, and scratches on her arms. (N.T. 6/21/18, 57, 60). The complainant's shirt was ripped, she was distraught, and looked disheveled. (N.T. 6/21/18, 57).

Officer Hancock asked the complainant what happened. Complainant stated that Appellant, her boyfriend, struck her with a hammer and punched her, hit her, choked her and scratched her. (N.T. 6/21/18, 59-60). The complainant then pointed out Appellant to the officer as Appellant was walking down the steps from the third floor. (N.T. 6/21/18, 60).

After medics treated the complainant, Officer Hancock accompanied the complainant to her third-floor apartment where, in a hallway, the officer saw a hammer and blood on a closet door. (N.T. 6/21/18, 61-62). Officer Winton placed Appellant under arrest. (N.T. 6/21/18, 63). Appellant appeared calm with no visible injuries. Appellant denied striking the complainant. (N.T. 6/21/18, 55, 67, 68, 69).[2]

The Commonwealth also presented, by way of stipulation, the partial contents of 911

---

[2] Appellant and the complainant were the parents of the baby. (N.T. 6/21/18, 77).

3

calls made early that morning by Appellant and a neighbor, along with the complainant's hospital records. (N.T. 6/21/18, 70-71). The hospital records indicated that complainant suffered a two-centimeter laceration over her scalp that was closed with four staples, pre-orbital swelling, and redness sore to the touch. (N.T. 6/21/18, 70, 73).

Appellant testified in his own defense. He testified that he and the complainant lived apart and shared care of their child. (N.T. 6/21/18, 77-78). On the day of the incident, he arrived at the complainant's residence after 1:00 a.m., intending to take the baby because he was planning to go see his family during the upcoming weekend. (N.T. 6/21/18, 78-79). When the complainant answered the door to her apartment, Appellant said she was intoxicated. He told her that he did not like that she was intoxicated while watching the baby. (N.T. 6/21/18, 79-80). Appellant stated that the complainant told him to stay and after telling her that he could not, he began gathering baby items to take with him, but remained to have something to eat. (N.T. 6/21/18, 80-81). While he was eating, the complainant continued to try to convince him to stay as she continued to drink alcoholic beverages. (N.T. 6/21/18, 80).

At some point, Appellant went to gather some belongings. When he did so, the complainant pulled out a hammer and warned Appellant that he was not going anywhere because they were a family as she swung the hammer at him. (N.T. 6/21/18, 81). According to Appellant, the complainant hit him in the chest with the claw end of the hammer causing him to start bleeding. (N.T. 6/21/18, 81-82). When Appellant told her to "chill out", she lunged at him and slipped and fell while doing so. (N.T. 6/21/18, 83). When she fell she hit her head on a step. (N.T. 6/21/18, 83-84).

After the complainant fell, Appellant retrieved the hammer and told the complainant that is what happens when she drinks. (N.T. 6/21/18, 84). He then tried to tend to her injury.

4

However, she went into the baby's room, grabbed the baby and again told Appellant that he was not leaving. (N.T. 6/21/18, 85). The couple began arguing over possession of the baby and, as they were doing so, a neighbor's boyfriend kicked in the door, entered the apartment and waived a gun. (N.T. 6/21/18, 85-86). The man said that he had a gun because he thought someone had broken into her apartment. The neighbor then walked the complainant and the baby downstairs and Appellant called the police. (N.T. 6/21/18, 88-901). When the police arrived, he told them about what had occurred. (N.T. 6/21/18, 94-95).

Appellant added that when the police asked the complainant if she wanted to press charges, she responded that, although Appellant had hit her, she did not want to have Appellant charged. (N.T. 6/21/18, 97). She thereafter changed her mind and said that she wanted to press charges against Appellant only after Officer Hancock told her that if she declined to do so, her baby would be taken by the Department of Human Services. (N.T. 6/21/18, 97). Appellant denied hitting the complainant and accused the police of abusing him and not taking a statement from him. (N.T. 6/21/18, 103-106).

## DISCUSSION

In his 1925(b) statement, Appellant raised two claims in his first issue. First, he asserts that this Court committed an abuse of discretion by permitting Officer Hancock to testify that the complainant said Appellant was the person responsible for her injuries. He also complains that without the disputed evidence underlying his first claim, the evidence was insufficient to sustain the convictions herein because the evidence "merely establishes that appellant was merely present at the scene where a person was found to be suffering from injuries allegedly incurred by means of an assault by a person who was not identified." Appellant's 1925(b) Statement, Issue

5

1. It is respectfully submitted that neither claim has merit, and both should be rejected on appeal.

With regard to the admission of Officer Hancock's testimony, a trial court's ruling on the admissibility of evidence is governed by an abuse of discretion standard. Commonwealth v. O'Brien, 836 A.2d 966, 968 (Pa. Super. 2003). An abuse of discretion is "not merely an error of judgment; rather, discretion is abused when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable or the result of partiality, prejudice, bias or ill-will, as shown by the evidence of record." Commonwealth v. Busanet, 817 A.2d 1060, 1076 (Pa. 2002) (citation omitted). Instantly, this Court did not abuse its discretion because the testimony in question, albeit hearsay, was clearly admissible under the excited utterance exception to the hearsay rule.

Hearsay is "a statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Pa.R.E. 801(c). Hearsay is *per se* inadmissible unless permitted by the Pennsylvania Rules of Evidence, rules promulgated by our Supreme Court or by legislative enactment. Commonwealth v. Dent, 837 A.2d 571 (Pa. Super. 2003).

There can be no doubt that the testimony at issue was admissible as an excited utterance. In Commonwealth v. Luster, 71 A.3d 1029 (Pa. Super. 2013), this Court recently wrote:

> Pennsylvania Rule of Evidence 803(2) defines an excited utterance as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." The Pennsylvania Supreme Court has explained that "it must be shown first, that [the declarant] had witnessed an event sufficiently startling and so close in point of time as to render her reflective thought processes inoperable and, second, that her declarations were a spontaneous reaction to that startling event." Commonwealth v. Sherwood, 603 Pa. 92, 982 A.2d 483, 496. (Pa.2009), cert denied, 559 U.S. 1111, 130 S.Ct.

6

2415, 176 L.Ed.2d 932 (U.S.2010) (internal citation omitted).

Luster, 71 A.3d at 1042.

In addition, the law provides that the speaker must be found to be in hysterical state of mind after "perceiv[ing] the happening" and statements must be made before the spontaneity is negated. Commonwealth v. Pronkoskie, 383 A.2d 858, 863 (Pa. 1978). There is no clear cut expiration on spontaneity. Id. In Commonwealth v. Wholaver, 989 A.2d 883 (Pa. 2010), our Supreme Court stated:

> There is no clearly defined time limit within which the statement must be made after the startling event; the determination is factually driven, made on a case-by-case basis. Id.; see also Commonwealth v. Boczkowski, 577 Pa. 421, 846 A.2d 75, 95–96 (2004). "The crucial question, regardless of the time lapse, is whether, at the time the statement is made, the nervous excitement continues to dominate while the reflective processes remain in abeyance." Pa.R.E. 803(2), cmt. (quoting Commonwealth v. Gore, 262 Pa.Super. 540, 396 A.2d 1302, 1305 (1978)).

Wholaver, 989 A.2d at 906-907. Further, "an excited utterance (1) need not describe ... the startling event ...; it need only relate to it, and (2) need not be made contemporaneously with, or immediately after, the startling event." Rule 803(2) cmnt. See also Commonwealth v. Carmody, 799 A.2d 143 (Pa. Super. 2002).

In this case, the evidence clearly showed that the complainant was distraught at the time she told the police that Appellant was the person who caused her injuries. Medic O'Donnell and Officer Hancock both testified that the complainant was distraught and upset when they arrived and spoke to her. 6/21/18, 21, 57). This was sufficient to allow the admission of the evidence because it is clear that she was still overwhelmed by what occurred to her at the time she related that Appellant caused her injuries. See Commonwealth v. Washington, 692 A.2d 1018, 1022 (Pa. 1997) (holding that it was proper to admit police officer's testimony that a named declarant

7

who witnessed a shooting where the declarant had been "in a very excited state"); Commonwealth v. Barnyak, 639 A.2d 40, 44 (Pa. Super. 1994) (holding that excited utterances by shooting victim and son were admissible even though made more than a half an hour after the shooting and in response to police questioning, where both victim and son were still visibly experiencing the overpowering emotion of the event), appeal denied, 652 A.2d 1319 (pa. 1994), cert. denied, 515 U.S. 1130 (1995). Accordingly, for the reasons stated, it is suggested that this claim be deemed lacking in merit.

The second part of Appellant's claim should also be rejected because Appellant can only obtain relief by excluding the testimony given by Officer Hancock that the complainant identified Appellant as the person who caused her injuries. The law does not permit a reviewing court to strike evidence admitted at trial when conducting a sufficiency review, even when that evidence has been improperly admitted, which is not the case herein as the above discussion demonstrates.

The applicable standard when evaluating the sufficiency of the evidence is whether the evidence, viewed in the light most favorable to the Commonwealth, is sufficient to enable a reasonable jury to find every element of the crime beyond a reasonable doubt. Commonwealth v. Watkins, 843 A.2d 1203, 1211 (Pa. 2003). The entire trial record should be evaluated, and all evidence received considered, whether or not the trial court's rulings thereon were correct. Commonwealth v. Laird, 988 A.2d 618, 622 (Pa. 2010). The trier of fact, while passing upon the credibility of witnesses and the weight of the evidence, is free to believe all, part, or none of the evidence. Id.

In view of the foregoing, it is clear that Appellant's sufficiency claim fails because a review of all of the evidence, including the complainant's excited utterance, duly presented

during the trial established that Appellant was not just merely present, as he contends, and that he was the cause of the complainant's injuries. Accordingly, it is respectfully suggested that Appellant's sufficiency claim be denied for the reasons stated.

In his final claim, Appellant contends that this Court committed an abuse of discretion when it imposed a sentence on Appellant because the sentence imposed was well above the aggravated range suggested by the Sentencing Guidelines. In addition, Appellant asserts that the sentence "was unduly harsh and excessive under the circumstances in light of the fact that [Appellant] suffers from mental illness, has obtained lawful employment, and furthered his education while on parole...." Appellant's 1925(b) Statement, Issue 2.

A trial court's sentencing decision will not be disturbed absent a manifest abuse of discretion. Commonwealth v. Smith, 673 A.2d 893, 895 (Pa. 1996) (citations omitted). "The sentencer has broad discretion to choose a penalty from sentencing alternatives and the range of permissible confinements, provided the choices are consistent with the protection of the public, the gravity of the offense, and the rehabilitative needs of the defendant." Commonwealth v. Devers, 546 A.2d 12, 13 (Pa. 1988); see also 42 Pa.C.S. § 9721(b). An appellate court is required to accord the sentencing court great weight as it is in the best position to view the defendant's character, displays of remorse, defiance or indifference, and the overall effect and nature of the crime. Commonwealth v. Clever, 576 A.2d 1108, 1110 (Pa. Super. 1990). If a sentence is within the statutory limits, the reviewing court will only find an abuse of discretion where a sentence is so manifestly excessive that if inflicts too severe a punishment. Commonwealth v. Kahley, 539 A.2d 389, 390 (Pa. Super. 1988).

With regard to Appellant's remaining attacks on the discretionary aspects of his sentence, "[t]he proper standard of review when considering whether to affirm a court's sentencing

9

determination is an abuse of discretion. An abuse of discretion is more than a mere error in judgment; thus a sentencing court will not have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will. Commonwealth v. Walls, 926 A.2d 957, 961 (Pa. 2007), citing Commonwealth v. Smith, 673 A.2d 893, 895 (Pa. 1996). In imposing a sentence, the court must consider the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community and the rehabilitative needs of the defendant as well as the sentencing guidelines. 42 Pa. C.S. § 9721(b), Walls, 926 A.2d at 963.

Applying the foregoing to Appellant's issue, it is clear that this Court did not commit an abuse of discretion because the sentence was not excessive under the circumstances and the Court did consider Appellant's circumstances and rehabilitative needs. During the sentencing hearing, this Court carefully listened as Appellant's counsel set forth mitigating circumstances calling for a reduced sentence. The Court also reviewed the pre-sentence reports, which outlined Appellant's horrendous history of domestic abuse. This Court's consideration of Appellant's mitigating evidence is reflected in the record where this Court noted that it had considered that evidence and, but for it, justice demanded a more severe sentence. (N.T. 9/21/18, 39-40).

Regarding the claim alleging that this Court did not consider Appellant's rehabilitative needs, this Court did consider them in fashioning the sentence imposed on Appellant. This Court carefully reviewed all of the reports and despite the seriousness of the underlying crimes, it decided against imposing a more serious sentence, one which would have reflected the seriousness of the offenses committed by Appellant and which would have protected the public from Appellant for a far longer period of time. Although this Court did not recite every word in 42 Pa.C.S. § 9721(b), the certified record reveals it thoroughly considered appropriate factors

10

prior to imposing sentence. <u>Commonwealth v. Anderson</u>, 830 A.2d 1013, 1018- 19 (Pa. Super.2003) (the record as a whole must reflect the court's reasons and its meaningful consideration of the facts of the crime and the character of the offender).

Finally, Appellant's sentence was not excessive in light of the seriousness of the underlying matters and the fact that Appellant attacked the complainant with a hammer in her own apartment in the middle of the night with their child present. In fact, in this Court's view, the aggregate sentence manifested leniency given the underlying facts and the importance of protecting the public from criminal violence. In a case where the maximum imposable sentence was far greater, it could be said that the sentence was too low. In any event, this Court considered all relevant factors in deciding upon a sentence. This Court followed the requirements under the law and, thus, it is suggested that the Honorable Court deem this issue to be lacking in merit.

## CONCLUSION

Based on the foregoing, it is respectfully suggested that the judgments of sentence entered in this matter against Appellants be affirmed.

BY THE COURT,

Date: April 15, 2019

Daniel D. McCaffery, J.

11

## CERTIFICATION OF SERVICE

I, James Molinari, Esquire, Law clerk to the Honorable Daniel D. McCaffery hereby

certifies that on the 15th day of April, 2019, by first class mail, postage prepaid, a true and correct

copy of the attached opinion was served upon the following:

James R. Lloyd., Esquire
1315 Walnut Street-Suite 1605
Philadelphia, Pa. 19107

Lawrence J. Goode, Esquire
Chief-Appeals Unit
Office of the Philadelphia
District Attorney
Three South Penn Square
Philadelphia, PA 19107

James Molinari, Esquire

12